# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

ANDREW JAMESON,           )
           )
     Plaintiff,         )
           )
     v.               )      No. 4:09CV2021RWS
           )
JAMES GOUGH, TIM SMITH,    )
and PENSKE LOGISTICS, LLC,  )
           )
     Defendants.      )

## <u>MEMORANDUM AND ORDER</u>

Plaintiff Andrew Jameson filed this lawsuit for employment discrimination in violation of the Missouri Human Rights Act against Defendants James Gough, Tim Smith, and Penske Logistics, LLC in Missouri state court. Jameson also brought claims for unlawful aiding and abetting and tortious interference against Gough and Smith. Although complete diversity is lacking on the face of the complaint—because both Jameson and Gough are citizens of Missouri—Defendants removed the lawsuit to federal court, claiming that Gough was fraudulently joined to defeat diversity jurisdiction. Jameson has moved to remand the lawsuit to Missouri state court. Because I find that Gough has not been fraudulently joined as a defendant, I lack subject-matter jurisdiction and grant Jameson's motion to remand this lawsuit to state court.

*Background*

On November 5, 2009, Plaintiff Andrew Jameson sued Defendants James Gough, Tim Smith, and Penske Logistics, LLC for employment discrimination in violation of the Missouri Human Rights Act ("MHRA"), Mo. Rev. Stat. § 213.055, in the Circuit Court for the County of St. Louis, State of Missouri. Jameson also brought counts against Gough and Smith for unlawful aiding and abetting in violation of Mo. Rev. Stat. § 213.070 and for common law tortious interference. Jameson is a citizen of Missouri. Gough is also a citizen of Missouri. Smith is a citizen of Illinois. Penske is a limited liability company organized under the laws of Delaware, with its principal place of business in Pennsylvania.

Jameson's complaint alleges he is an African-American man who was discharged from his position at Penske on account of his race, on or about August 19, 2008. Jameson also alleges Gough and Smith were his supervisors and "repeatedly and continually" discriminated against him because of his race "by continually uttering false representations to [his] superiors concerning" his performance at Penske, which contributed to his discharge from Penske.

Jameson filed a charge of discrimination with the Missouri Commission on Human Rights ("MCHR") in which he named only Penske, and not Gough or

Smith, in the MCHR charge.  On August 11, 2009, the MCHR issued a right to sue

letter to Jameson.

On December 9, 2009, Defendants removed this lawsuit from the state court

to the United States District Court for the Eastern District of Missouri, claiming

that Gough was fraudulently joined to defeat diversity jurisdiction.  Jameson now

moves to remand the case to the Circuit Court of the County of St. Louis.

***Discussion***

"Federal courts are courts of limited jurisdiction.  They possess only that

power authorized by Constitution and statute."  Kokkonen v. Guardian Life Ins.

Co., 511 U.S. 375, 377 (1994).  The propriety of removal to federal court depends

on whether the claim comes within the scope of the federal court's subject matter

jurisdiction.  See 28 U.S.C. § 1441(b).  The party seeking removal and opposing

remand has the burden to establish federal subject matter jurisdiction.  In re Bus.

Men's Assurance Co. of Am., 992 F.2d 181, 183 (8th Cir. 1993).  All doubts about

federal jurisdiction must be resolved in favor of remand.  Id. at 183.

A claim may be removed only if it could have originally been brought in

federal court.  Peters v. Union Pac. R.R. Co., 80 F.3d 257, 260 (8th Cir. 1996).

Defendants removed this case based on diversity of citizenship jurisdiction under

28 U.S.C. § 1332.  Under that statute, complete diversity of citizenship between

the plaintiffs and defendants must exist, and the amount in controversy must exceed the sum or value of $75,000.

A "court may disregard the citizenship of a non-diverse defendant who was frivolously joined in an effort to defeat diversity" under the doctrine of fraudulent joinder. In re Genetically Modified Rice Litigation, 618 F. Supp. 2d 1047, 1052 (E.D. Mo. 2009). "A joinder is fraudulent only when there exists no reasonable basis in fact and law supporting a claim against the resident defendants." Wilkinson v. Shackleford, 478 F.3d 957,964 (8th Cir. 2007). "[I]f there is a 'colorable' cause of action—that is, if the state law *might* impose liability on the resident defendant under the facts alleged—then there is no fraudulent joinder." Filla v. Norfolk Southern Ry. Co., 336 F.3d 806, 810 (8th Cir. 2003) (emphasis in original). The focus is "only on whether a plaintiff 'might' have a 'colorable' claim under state law against a fellow resident, not on the artfulness of the pleadings." Wilkinson, 478 F.3d at 964. "A proper review should give paramount consideration to the reasonableness of the basis underlying the state claim." Menz v. New Holland North America, Inc., 440 F.3d 1002, 1004 (8th Cir. 2006).

Defendants argue that Gough is fraudulently joined because (1) Gough does not qualify as an employer and therefore cannot be sued under the MHRA; (2) Jameson cannot state a claim against Gough because Jameson failed to exhaust his

administrative remedies with the MCHR; (3) the MHRA is unconstitutional as applied to Gough because it violates the Equal Protection Clause of the Fourteenth Amendment; and (4) Jameson has sued Gough solely for the purposes of destroying diversity.[1]

*Gough as an "employer"*

Defendants argue that Jameson has failed to state a claim against Gough because Gough does not qualify as an "employer" as defined by the MHRA. Under the MHRA, it is "an unlawful employment practice for an employer, because of race . . . to fail or refuse to hire or to discharge any individual, or to otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race . . . ." Mo. Rev. Stat. § 213.055.1(1)(a). The Act defines "employer" as "the state, or any political or civil subdivision thereof, or any person employing six or more persons within the state, and any person directly acting in the interest of an employer, but does not include corporations and associations owned and operated by religious or sectarian groups." § 213.010(7).

---

[1] Defendants also argue that Jameson has failed to state a claim for aiding and abetting and for tortious interference. Because I find that Missouri might impose liability on Gough under the Missouri Human Rights Act, I need not address whether Missouri law might impose liability for aiding and abetting and for tortious interference.

Defendants initially argued that Gough cannot qualify as an "employer" under the MHRA because he had no authority to terminate any employee, including Jameson, and could therefore not be "acting in the interest" of his employer. Defendants then argued that, even if Gough qualifies as an employer, Gough cannot be liable under the MHRA unless he had the authority to terminate employees. Jameson argues that the MHRA does not require that Gough have termination authority to qualify as an employer, and Gough only needed to be directly acting in the interest of Penske.

Under the MHRA, "any person directly acting in the interest of an employer" qualifies as an employer. § 213.010(7). Defendants do not contest that Penske qualifies as an employer under the MHRA. Accordingly, if Gough directly acted in the interest of Penske, he qualifies as an employer under the MHRA. The MHRA does not require that Gough have authority to terminate Jameson in order to qualify as an employer. "[T]he MHRA is intended to reach . . . any person acting directly in the interest of the employer. A supervisory employee clearly falls into this category." Hill v. Ford Motor Co., 277 S.W.3d 659, 669 (Mo. 2009). Defendants do not contest that Gough was Jameson's supervisor at Penske. As a result, Defendants' argument that Gough does not qualify as an employer is without merit.

Defendants' argument that, regardless of whether Gough directly acted in

the interests of Penske, Gough cannot be held liable for violating § 213.055.1

unless he could act "to fail or refuse to hire or to discharge" another person

"because of" a protected characteristic is also without merit. The MHRA does not

limit liability to employers who possess authority to terminate employees. It

imposes liability for several types of discriminatory acts: failing or refusing to hire

an individual, discharging an individual, or *otherwise discriminating* against any

individual with respect to his compensation, terms, conditions, or privileges of

employment. Mo. Rev. Stat. §213.055.1(1)(a). In this lawsuit, Jameson alleges

Gough was his supervisor and Gough "repeatedly and continually discriminated

against" him "by continually uttering false representations to [his] superiors

concerning" Jameson's performance.

The question for me is not whether state law *will* impose liability on Gough,

but whether state law *might* impose liability. <u>Filla</u>, 336 F.3d at 810. On the facts

alleged, Jameson might have a claim under the MHRA against Gough.

*Exhaustion of administrative remedies*

Defendants argue that Jameson cannot state a claim against Gough because

Jameson failed to exhaust his administrative remedies when he failed to name

Gough in his MCHR charge of discrimination. Jameson argues that his failure to make Gough a party to the MCHR charge did not prejudice Gough.

The Supreme Court of Missouri recently held that "the failure to make [a supervisor] a party at the administrative action before the EEOC or the Missouri Commission on Human Rights ('MCHR') will bar suit against him only if it resulted in prejudice." Hill, 277 S.W.3d at 662. The court explained that the purpose of requiring an individual to be named in the administrative charge is "to give notice to the charged party and to provide an avenue for voluntary compliance without resort to litigation. . . ." Id. at 669. The court identified four factors that courts should consider when deciding if the failure to join the individual in the initial charge should be forgiven. Id. They are:

> 1) whether the role of the unnamed party could be through reasonable effort by the complainant be ascertained at the time of the filing of the EEOC [or MCHR] complaint; 2) whether, under the circumstances, the interests of a named are so similar as the unnamed party's that for the purpose of obtaining voluntary conciliation and compliance it would be unnecessary to include the unnamed party in the EEOC [or MCHR] proceedings; 3) whether its absence from the EEOC [or MCHR] proceedings resulted in actual prejudice to the interests of the unnamed party; 4) whether the unnamed party has in some way represented to the complainant that its relationship with the complainant is to be through the named party.

Id. at 669–70.

The parties have not identified any Missouri cases applying the Hill factors

to determine if a plaintiff's failure to name his or her supervisor in the MCHR

charge should be excused. My own research finds none.[2] Several federal district

courts have discussed Hill when deciding whether a supervisor was fraudulently

joined. Because Hill holds that there are circumstances under which the case can

proceed, despite the failure to name the supervisor in the administrative charge,

district courts have concluded that "there is a reasonable basis for predicting that

the state's law *might* impose liability against the defendant." See, e.g., Adamson

v. Durham D &M, LLC, No. 09-0523-CV-W-ODS (W.D. Mo. July 15, 2009);

Johnson v. Durham D & M, L.L.C., No. 09-CV-0502-W-HFS (W.D. Mo. Aug.

19, 2009); Conard v. Bayer CropScience, LP, No. 09-0695-CV-W-FJG (W.D.

Mo. Dec. 10, 2009); Sinderson v. Bayer CropScience, LP, No. 09-0693-CV-W-

FJG (W.D. Mo. Dec. 10, 2009); Black v. CropScience, No. 09-0807-CV-W-FJG

(W.D. Mo. Dec. 23. 2009); see also Shivers v. City of University City, No.

4:09CV630SNLJ (E.D. Mo. Feb. 2, 2010) (finding plaintiff could pursue MHRA

claim against supervisors despite her failure to name them in her administrative

charge of discrimination).

_____

[2] A handful of Missouri cases cite Hill, but none of them apply the factors for determining whether to excuse the plaintiff's failure to name a supervisor in the charge of discrimination.

In the absence of any Missouri law indicating Jameson's failure to name Gough in the administrative charge would not be excused, I believe the question is better suited for review by a Missouri court.  See Johnson, No. 09-CV-0502-W-HFS. (W.D. Mo. Aug. 19, 2009).

*The Equal Protection Clause*

Defendants argue that no arguably reasonable basis exists on which to conclude that Missouri law might impose MHRA liability on Gough because Mo. Rev. Stat. § 213.055 is unconstitutional as applied to Gough.  Defendants assert that the MHRA violates the Equal Protection Clause of the United States Constitution because it permits persons employed by private businesses with fewer than six employees to discriminate with impunity while it imposes liability on persons who engage in the same discriminatory conduct if they are employed by private business with six or more employees.  Jameson argues that Missouri has a rational basis for distinguishing between businesses employing six or more people and business with five or less employees.

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike."  City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432,

439 (1985). Unless the classification is based on a suspect or quasi-suspect class, "legislation is presumed to be valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate state interest." Id. at 440. This is true "even if the law seems unwise or works to the disadvantages of a particular group, or if the rationale for it seems tenuous." Romer v. Evans, 517 U.S. 620, 632 (1996).

"The State may not rely on a classification whose relationship to an asserted goal is so attenuated as to render the distinction arbitrary or irrational." City of Cleburne, 473 U.S. at 446. A classification based on an irrational prejudice or animosity will not survive rational basis review. Id. at 450 (finding state action was based on an irrational prejudice against the mentally retarded); Romer, 517 U.S. at 634 (finding the disadvantage imposed by state action was born of animosity towards homosexuals). "In areas of social and economic policy, a statutory classification that neither proceeds along suspect lines nor infringes fundamental constitutional rights must be upheld against [an] equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification." F.C.C. v. Beach Commc'ns., Inc. 508 U.S. 307, 313 (1993).

Defendants explain that while the Missouri has an interest in prohibiting

employment discrimination, "it cannot do so by creating irrational and

unconstitutional classifications." Hetherton v. Sears, Roebuck & Co., 652 F.2d

1152, 1159 (3d Cir. 1981). Defendants do not assert that the MHRA's distinction

between supervisory employees employed by businesses with six employees and

supervisory employees employed by businesses with fewer than six employees is

based on prejudice or animosity. Instead, they liken it to a classification based on

freeholder status. In Heatherton, the Third Circuit Court of Appeals struck down

a Delaware law that granted preferential treatment to freeholders over non-

freeholders. Id. at 1157. The court noted that "[t]he Supreme Court has

consistently looked askance at classifications based on the ownership of land."

Id. at 1158.

Defendants have not identified any Supreme Court authority that suggests

that the MHRA's classification based on the number of employees employed by a

business is unquestionably unconstitutional. Defendants have cited, however,

several opinions from the Courts of Appeals that indicate *as a matter of statutory*

*construction*, the ADEA and Title VII do not permit supervisor liability. See,

e.g., Birkbeck v. Marvel Lighting Corp., 30 F.3d 507 (4th Cir. 1994); Miller v.

Maxwell's Intern, Inc., 991 F.2d 583 (9th Cir. 1993); Lissau v. Southern Food

Serv., Inc., 159 F.3d 117 (4th Cir. 1998). None of those opinions concluded (or even suggested) that such a classification would violate the equal protection guarantees contained in the federal constitution.

Defendants argue that I should not "defer" to a Missouri state court on their federal constitutional challenge. Federal courts are not the only courts capable of constitutional interpretation, however. The Missouri courts are capable of interpreting the federal constitution. Given the deference courts must give legislative action when conducting rational basis review and the absence of any caselaw demonstrating that the MHRA's classification scheme is unquestionably unconstitutional when applied to Gough, I conclude that Missouri *might* impose liability on Gough.

*Adding Gough for the sole purpose of destroying diversity*

Defendants argue that Jameson's "sole intent" in suing Gough is to destroy diversity jurisdiction. "Joinder designed solely to deprive federal courts of jurisdiction is fraudulent and will not prevent removal." Anderson v. Home Ins. Co., 724 F.2d 82, 84 (8th Cir. 1983). "Joinder is fraudulent only where there is no reasonable basis in fact or colorable ground supporting the claim against the resident defendant, or where the plaintiff has no real intention of prosecuting the action against the resident defendant." Reeb v. Wal-mart Stores, Inc., 902 F.

Supp. 185, 187 (E.D. Mo. 1995). Accordingly, where the only reason for the non-diverse defendant's presence in the lawsuit is to destroy federal jurisdiction, the defendant is fraudulently joined. Reeb, 902 F. Supp at 189.

Unlike Reeb, Jameson has a basis for naming Gough as a defendant. The MHRA allows for supervisor liability. Hill, 277 S.W.3d at 669. Jameson alleges that Gough "repeatedly and continually discriminated against [him] because of his race by continually uttering false representations to [his] superiors concerning" Jameson's performance. Because Jameson has a reasonable basis for naming Gough as a defendant, I conclude that Gough was not joined solely for the purpose of defeating diversity jurisdiction.

When "the sufficiency of the complaint against the non-diverse defendant is questionable, the better practice is for the federal court not to decide the doubtful question in connection with a motion to remand but simply to remand the case and leave the question for the state courts to decide." Filla, 335 F.3d at 811. Because I am "required to resolve all doubts about federal jurisdiction in favor of remand," I find that Gough was not fraudulently joined. Wilkinson, 478 F.3d at 963. As a result, I lack subject matter jurisdiction over this case and must remand it to state court.

Accordingly,

**IT IS HEREBY ORDERED that** Plaintiff's motion to remand [#10] is

**GRANTED**.

**IT IS FURTHER ORDERED, ADJUDGED and DECREED** that this

case is **REMANDED** to the Circuit Court for the County of St. Louis, State of

Missouri under 28 U.S.C. § 1447(c).

Dated this 24th Day of February, 2010.

 

 

RODNEY W. SIPPEL
UNITED STATES DISTRICT JUDGE